UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

FEDERAL INSURANCE CO.  Case No. 06-CV-0614 (PJS/JJG)
as subrogee of Lecy Construction, Inc.,

   Plaintiff,

                                                   ORDER DENYING DEFENDANT'S
v.                                                 MOTION FOR SUMMARY JUDGMENT

WESTURN CEDAR SUPPLY, INC.,

   Defendant.

---

James I. Tarman, Jr., and S. Ellyn Farley, COZEN O'CONNOR; James C. Erickson, Sr., JENSEN BELL CONVERSE & ERICKSON, PA, for plaintiff.

Victor E. Lund and Richard P. Mahoney, MAHONEY DOUGHERTY AND MAHONEY, PA, for defendant.

In April 2004, fire destroyed a house that Lecy Construction, Inc. ("Lecy") was building for the Sedley family in Minnetonka, Minnesota. Plaintiff Federal Insurance Co. ("Federal"), Lecy's insurer, paid the Sedleys for the loss. Federal contends that the fire was caused by the negligence of defendant Westurn Cedar Supply, Inc. ("Westurn") or someone working for Westurn. Federal, as Lecy's subrogee, brings this suit to recover from Westurn what Federal paid to the Sedleys. Westurn moves for summary judgment.

I.  BACKGROUND

The Sedley family hired Lecy as a general contractor to build the family a new home in Minnetonka, Minnesota. Lecy subcontracted the siding work to Westurn. Mahoney Aff. Ex. A [Docket No. 36]. Westurn, in turn, hired various people to do the actual siding.

Shortly before the fire, a Westurn employee, Chad Sigafoos, contacted one of Westurn's regular subcontractors, Mike McGuiggan of Buckshot Exteriors, to see if McGuiggan could work on the Sedleys' house.  Mahoney Aff. Ex. G ("McGuiggan Dep.") at 25-28.  McGuiggan could not, but he offered to put a siding worker he knew in touch with Sigafoos.  *Id.* at 25-26 ("So I told Westurn that I have a guy that maybe could do it.  I said, 'I'll give him your address and I'll have him call you.'"), 31 ("I said [to Sigafoos], 'But I have a guy that you could use,' or, you know, 'I'll see if I can get ahold of him for you.'").

McGuiggan called Dave Tulkki, a self-employed siding worker, and told him about the job.  *Id.* at 32-33.  McGuiggan gave Tulkki the address of the job site and told him to call Sigafoos if he wanted the work.  *Id.* at 32; Mahoney Aff. Ex. E ("Tulkki Dep.") at 10, 52.  Tulkki did not call Sigafoos, but simply showed up at the job site with an assistant.  After talking to Lecy's on-site manager (Tim Haunty), Tulkki and his assistant started work on the siding.  Tulkki Dep. at 10, 12, 51-52.  In the course of putting up the siding, Tulkki moved a halogen lamp that was attached to the side of the house.[1]  Mahoney Aff. Ex. B at 2.  That night, a fire destroyed the house.  An inspector for the fire department later determined that the fire had been started by the halogen lamp that Tulkki moved.  Mahoney Aff. Ex. B.

## II.  ANALYSIS

### A.  *Standard of Review*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[1] There is some dispute over who moved the lamp.  For purposes of this motion, the Court assumes that it was Tulkki.

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006). In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### B. Westurn's Liability for Its Subcontractors' Actions

Westurn argues that because Tulkki was not Westurn's employee, but "at best a subcontractor, i.e., perhaps merely a meddling interloper," Westurn cannot be held liable for damages resulting from Tulkki's negligence. Def. Mem. Supp. Mot. S.J. ("Def. SJ Mem.") at 9 [Docket No. 37]. Westurn is incorrect.

Tulkki was probably not a "meddling interloper." Sigafoos (a Westurn employee) called McGuiggan, and McGuiggan, with Sigafoos's knowledge and acquiescence, called Tulkki. Tulkki and his assistant then traveled to the job site and, with the knowledge and acquiescence of Haunty (a Lecy employee), started doing the siding work that Westurn had been hired to do. It seems unfair to say that Tulkki was "interloping" or "meddling" at the job site. That said, the Court does agree with Westurn that the undisputed facts establish that Tulkki was not Westurn's employee. *See id.*; Def. Reply Mem. at 5-9 [Docket No. 42]. Rather, Tulkki was probably an

independent contractor.  *See* Def. SJ Mem. at 15 ("Tulkki was at best a non-agent subcontractor of Westurn.").

Under Minnesota law, a party who hires an independent contractor is not, as a general matter, liable for the negligence of that independent contractor.  *See, e.g., Pac. Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, 277 N.W. 226, 228 (Minn. 1937); *see also* Restatement (Second) of Torts § 409 (1965).  But there are so many exceptions to this general rule that seventy years ago the Minnesota Supreme Court was already warning that "it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions."  *Kenny Boiler*, 277 N.W. at 228.

Westurn contends that no exception is applicable in this case and that Westurn therefore cannot be held liable for Tulkki's negligence.  But in *Kenny Boiler*, the Minnesota Supreme Court established that contractors (here, Westurn) are liable to those who hire them (here, Lecy) for the negligent actions of their subcontractors (here, Tulkki).  In particular, *Kenny Boiler* said:

> Where one person [e.g., Westurn] owes another [e.g., Lecy] a contractual duty to act, the law imposes upon the person owing that duty the further duty of acting with due care in the performance of his contract so as not to injure the contractee's person or property.  *This duty is nondelegable*.  That is, the performance of the contract may be delegated to another [e.g., Tulkki], but this delegation does not relieve the contractor of the duty to act, or of his duty to act with due care.  Consequently *defendant [the contractor] is subject to liability for damage suffered by the contractee as a result of the negligence of the independent subcontractor*.

*Id.* (citations omitted; emphasis added).  Subsequent cases have applied this rule in situations almost indistinguishable from this case.

Perhaps the most significant case in this area — at least since *Kenny Boiler* — is *Brasch v. Wesolowsky*, 138 N.W.2d 619 (Minn. 1965). *Brasch*, like this case, involved construction of a house. The plaintiff, Marie Brasch, hired the defendant, Gabriel Wesolowsky, as a general contractor to build her a custom house. *Id.* at 621. Wesolowsky hired a subcontractor to excavate the building site so that the foundation could be poured. The excavation was badly done, and once the house was built, significant cracks appeared in the walls and the garage floor. Brasch sued Wesolowsky for the cost of repairing the cracks. *Id.* at 622.

Wesolowsky contended that he was not liable because "he was merely the agent of plaintiff with implied authority to engage sub-agents to perform those services outside his general type of work." *Id.* at 623. The Minnesota Supreme Court rejected this argument because the record established that Wesolowsky "held himself out as a general contractor and agreed, among other things, to construct a solid foundation." *Id.* The court said:

> On this state of the record, the defendant's claims are controlled by *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, . . . where we held that a contractor owes his contractee a duty to use due care in the performance of his undertaking and that his duty is nondelegable. Thus, defendant's admitted agreement bound him to respond in damages to plaintiff for unworkmanlike performance within the scope of his undertaking, notwithstanding the fact that someone else may have actually performed the work.

*Id.* (citation and footnote omitted).

Westurn attempts to distinguish *Brasch*, arguing that it stands for the "unexceptional" proposition that "the general contractor who fails to deliver the house that he promised to build in a workmanlike manner is responsible for defects even if subcontractors did the work." Def. Reply Mem. at 3-4. But this principle covers this very case: If a contractor is liable for a subcontractor's negligence when the negligence results in a cracked foundation, then surely a

contractor is liable for a subcontractor's negligence when the negligence results in a home-destroying fire.

The Minnesota Court of Appeals followed both *Brasch* and *Kenny Boiler* in *Theissen-Nonnemacher, Inc. v. Dutt*, another case involving defective construction of a custom home.  393 N.W.2d 397 (Minn. Ct. App. 1986).  In *Theissen-Nonnemacher*, the homeowner sued the general contractor for a defective roof.  *Id.* at 400-01.  The trial court refused to award damages for the roof, finding that, because the roofing subcontractor had provided a warranty for the roof, the general contractor was not liable for the subcontractor's deficient work.  *Id.*  The court of appeals reversed based on *Brasch* and *Kenny Boiler*, observing that *Kenny Boiler* "makes explicit the relationship of the various contractors when defective construction occurs" and quoting the passage from *Kenny Boiler* quoted at length above.  *Id.* at 401.

It is apparent from *Brasch*, *Theissen-Nonnemacher*, and numerous other cases that the Minnesota Supreme Court meant what it said in *Kenny Boiler*:  If an employer hires a contractor to do a job, the contractor has a nondelegable duty to do the job for which he was hired, and the contractor is therefore liable to the employer for the negligence of any subcontractors hired by

the contractor.[2]  Accordingly, if Tulkki was negligent, Westurn cannot escape liability to Lecy for that negligence on the basis that Tulkki was Westurn's subcontractor.

### C. Lecy's Fault

Westurn also contends that Lecy was at fault for the fire because a Lecy employee installed the incendiary halogen lamp in the first place and Lecy's on-site manager (Haunty) told Tulkki to move the lamp.  Def. SJ Mem. at 15-17.  Even if this is true, it is not a basis for summary judgment.  The degree of comparative fault between Lecy and Westurn presents a question of fact for the jury.

---

[2]*See, e.g., Bagot v. Airport & Airline Taxi Cab Corp.*, No. C1-00-1291, 2001 Minn. App. LEXIS 132, at *10-11 (Minn. Ct. App. Jan. 30, 2001) (discussing *Kenny Boiler*); *Nelson v. Vogt*, Nos. C9-97-670, C4-97-1161, 1998 Minn. App. LEXIS 65, at *6-7 (Minn. Ct. App. Jan. 20, 1998) ("Nelson, as the general contractor, was ultimately responsible for damages that occurred because of defective construction or materials provided by the various subcontractors."); *Nichols v. Metro. Bank*, 435 N.W.2d 637, 640 (Minn. Ct. App. 1989) (citing *Brasch* for proposition that "contractors owe their contractees a nondelegable duty to use due care in the performance of their undertakings"); *Marshall v. Marvin H. Anderson Constr. Co.*, 167 N.W.2d 724, 727 (Minn. 1969) (relying on *Brasch* in holding that a homebuilder's "agreement bound it to respond in damages for unworkmanlike performance within the scope of its undertaking"); *Larsen v. Minneapolis Gas Co.*, 163 N.W.2d 755, 762 (Minn. 1968) (holding that "[the contractor's] liability to third parties for damages resulting from [its subcontractor's] negligence in the performance of work under its contract with [the contractor] can only be vicarious").

This is not to say that contractors are liable for *all* of the actions of their subcontractors. In particular, if a subcontractor's negligence causes injury to one of that subcontractor's own employees, the contractor cannot be held vicariously liable to the subcontractor's employee for the subcontractor's negligence.  *See Conover v. N. States Power Co.*, 313 N.W.2d 397, 403 (Minn. 1981) ("The next issue . . . is whether the employer of an independent contractor is vicariously liable, under a nondelegable duty theory, for negligence of the contractor which causes injury to the contractor's employee.  We hold the employer is not."); *Vagle v. Pickands Mather & Co.*, 611 F.2d 1212, 1219 (8th Cir. 1979).

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant Westurn Cedar Supply, Inc.'s motion for summary judgment [Docket No. 35] is DENIED.

Dated:  March 13, 2008                                s/Patrick J. Schiltz                                
                                                     Patrick J. Schiltz
                                                     United States District Judge